## GRANGE MUT. FIRE INS. CO. v. COMMONS, Inc.
### No. 4016.

Circuit Court of Appeals, First Circuit.
Jan. 11, 1945.

Frederick W. Branch and Thorp & Branch, all of Manchester, N. H., for appellant.

Alexander Murchie, Robert C. Murchie and Murchie & Murchie, all of Concord, N. H., and Nathan Fink, of Boston, Mass., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

WOODBURY, Circuit Judge.

This is an appeal from a judgment entered on a verdict returned by a jury for the plaintiff in an action to recover on an oral contract for fire insurance. Federal jurisdiction rests upon diversity of citizenship and amount in controversy. The questions before us are with respect to the sufficiency of the evidence to support the verdict and the admissibility of certain evidence.

From the record it appears that one Thomas Maren, president of the plaintiff corporation, who for convenience will be referred to hereinafter as the plaintiff, on April 28, 1943, entered into a contract for the purchase of a farm in Londonderry, New Hampshire, from a Mrs. Morse. The plaintiff was represented in this transaction by a local real estate and insurance agent named Cushing through whom he agreed to place fire insurance on the premises. Soon after the contract was executed and before final arrangements for financing had been made and the deed passed, the plaintiff, with Mrs. Morse's permission, sent workmen, tools, equipment and building materials to the farm and began to make extensive alterations to the house and

barns. On account of these activities the plaintiff decided that he ought to have immediate insurance coverage, and on May 3 or 5, the evidence is conflicting and the exact date is unimportant, he went to Cushing's office and there signed a blank application for fire insurance in the defendant company. It appeared that at or before this time the plaintiff and Cushing had agreed that the buildings should be insured for the gross amount of $15,000 and that Cushing, because of his experience in such matters, should "break it down", that is, apportion the total amount of insurance between the different buildings. The plaintiff testified that at the time he signed the blank application he was assured by Cushing that from that moment he was "covered" by the defendant company for the total amount agreed upon.

Cushing promptly filled out the application giving the date for the insurance to take effect as noon on May 12, 1943, and forwarded it to the defendant's home office. The defendant's president inspected the risk, approved coverage for $10,000 in the defendant company,[1] had a policy drawn in that amount to take effect at noon on May 12, and sent it to Cushing on May 9 or 10. On May 11, 1943, the buildings were totally destroyed by a fire of unknown origin.

■ No question of the plaintiff's insurable interest is raised, and the defendant concedes that oral contracts for insurance, both executed and executory, are valid and can be enforced under New Hampshire law. See Elliott v. Standard Accident Insurance Company, 92 N.H. 505, 510, 33 A.2d 562. The question presented is whether there is any evidence from which it could be found that Cushing had authority to bind risks in the defendant company.

The evidence of Cushing's express authority is vague. We need not analyze it, however, because in our view the evidence of Cushing's apparent authority is sufficient to support the verdict.

■ Cushing testified on direct examination that he had general authority to act as the defendant's agent throughout the State of New Hampshire. It definitely appears, nevertheless, that he did not have authority to write policies for the defendant but had authority only to prepare applications for policies and forward them to the defendant's home office for acceptance or rejection. But there is undisputed testimony in the record that Cushing represented several fire insurance companies in addition to the defendant and that some of these had authorized him to prepare and issue policies in their names. Cushing therefore had authority to bind risks in these companies. An agent who can immediately issue a policy in his company, in effect can bind a risk in it, and two of the plaintiff's witnesses who had been for many years in the insurance business in New Hampshire testified that it was a long established custom or general usage for insurance companies to authorize their New Hampshire agents clothed with authority to issue policies, that is, their general agents as distinguished from their soliciting or special agents, to bind risks orally. cf. Great American Indemnity Co. v. Richard, 90 N. H. 148, 150, 5 A.2d 674.[2] Thus even though Cushing lacked express authority to do what the plaintiff said and the jury must have found that he purported to, i. e. bind the plaintiff's risk in the defendant company, the fact remains that in so doing he not only acted in the reasonable prosecution of the business of his agency (Atto v. Saunders, 77 N.H. 527, 528, 93 A. 1037) but also did what agents of his type (general ones) are ordinarily authorized to do. And this invokes the rule that "a principal is bound by his agent's act if 'it is one agents in that line of business are accustomed to do.'" Federal Insurance Co. v. Sydeman, 82 N.H. 482, 485, 136 A. 136, 138, and cases cited.

But the defendant contends that the above rule is inapplicable here because there is no evidence in the record that the plaintiff knew of or relied upon any general custom or usage of general agents in New Hampshire to bind risks. We do not agree.

■ The plaintiff testified that he thought that he was covered from the moment when Cushing told him that he was covered, and from this the jury could properly infer that he was relying upon the custom of agents like Cushing to bind risks

---

[1] He placed the balance of $5,000 with companies which he represented as agent.

[2] The defendant relies heavily upon this case but it is not in point because the question in it was with respect to the scope of the apparent authority of soliciting or special agents, not general ones, and the court was careful to limit its discussion to the point before it.

orally. Furthermore, since the custom or usage relied upon was a well established general one in the insurance business, not one peculiar to the defendant, that is, one growing out of particular instances of past conduct peculiar to the defendant's way of transacting its business, the burden of introducing evidence of the plaintiff's non-reliance upon the custom rested upon the defendant.

The reason for this is that an appearance of authority can arise in either one of two ways. It can arise because the principal has so conducted his business as to give third persons the right to believe that the act in question was authorized, or it can arise because the act done by the agent was one agents in his line of business are accustomed to do. Davison v. Parks, 79 N.H. 262, 263, 108 A. 288. In the first situation clearly there can be no appearance of authority unless the third person knows how the principal has been carrying on his business and so it is part of a plaintiff's case to show such knowledge and reliance upon it. But in the second situation (the one present here) where the appearance of authority rests upon a settled custom uniformly acted upon in a business, a plaintiff has made out a case of apparent authority when he has shown the custom because it may fairly be assumed that persons will contract with reference to it. Hening N.H.Dig. p. 427. Thus the burden is upon a defendant to show by way of defense that, appearances to the contrary, the plaintiff had actual knowledge that Cushing had less authority than agents such as he usually had.

The defendant argues, however, that the application blank which the plaintiff signed gave him actual notice of Cushing's lack of authority to bind. We do not so read it. The application gave notice of the terms and conditions under which a policy would be issued if the application were accepted, but it does not seem to us that anyone reading the printed application form would be able to draw any inference one way or another with respect to an agent's authority to bind a risk orally pending the issuance of a policy.

The defendant's exception to the denial of its motion to strike the testimony of the two insurance agents who testified for the plaintiff on the ground of lack of evidence that the plaintiff knew of and relied upon the custom to which they testified is disposed of by what has already been said. Its other exceptions to the admission of testimony need not be considered because if there was error in the court's rulings the errors are harmless.

The judgment of the District Court is affirmed with costs to the appellee.