## INSURANCE COMPANY OF NORTH AMERICA v. BURTON et al.

No. 19579. Opinion Filed Nov. 11, 1930.

Rehearing Denied Jan. 12, 1931.

Tomerlin & Chandler, for plaintiff in error.

Frank E. Lee, for defendant in error National Fire Insurance Company.

DIFFENDAFFER, C. This is an action to determine which of two fire insurance companies is liable for the loss by fire sustained by defendant in error, N. M. Burton.

The National Fire Insurance Company of Hartford, through its agent, J. S. Hurt, issued plaintiff a fire insurance policy for $2,500 covering a potato warehouse located in Eufaula. The policy was dated September 26, 1926. The premium was $42. Plaintiff paid $20 on the premium. He directed the agent to attach a mortgage clause to the policy in favor of the Exchange Trust Company of Tulsa, and send the policy to it. The agent did not send the policy to the trust company, but held it in his own possession until about November 5, 1926, at which time he received a telegram from the insurance company, directing him to cancel the policy, whereupon he attempted to cancel it, and on November 6th issued another policy for a like amount covering the same property, placing it in the Insurance Company of North America.

On November 7th, the warehouse was totally destroyed by fire. Burton, being uncertain as to which company was liable, gave notice of loss and made proof of loss to each company. Each company denied liability, whereupon Burton brought separate suits. The two actions were consolidated, and, at the trial, it was stipulated that one of the companies was liable, and that the amount of insurance plaintiff was entitled to recover exclusive of interest was

$2,500. There was a further stipulation, as follows:

"It is further stipulated and agreed between all parties that in case judgment is rendered against one of the defendants in said consolidated cause and said company against whom said judgment is rendered appeals the same to the Supreme Court, and, upon final determination of said cause, the Supreme Court shall determine that said company is not liable but that other insurance company is liable, that the Supreme Court may enter judgment against the company found to be liable in the final determination of the cause in said court without any appeal being taken by the insured. That the causes are consolidated under No. 5189."

The question of the right of plaintiff to recover on both policies to their full amount is not in this case. It was not considered below and is not considered here.

The cause was tried to the court, without a jury, resulting in finding, in effect, that both companies were liable to plaintiff for the $2,500; that the primary liability for the payment of the judgment was upon the Insurance Company of North America, and the secondary liability therefor was upon the National Fire Insurance Company. Judgment was rendered accordingly against both companies for $2,500, with interest from March 1, 1927, at six per cent., until paid, and providing further that in the event the Insurance Company of North America should fail, refuse, or neglect to pay the same, and National Fire Insurance Company is compelled to and does pay same, then, in that event, National Fire Insurance Company have judgment against the Insurance Company of North America to reimburse it.

From this judgment, the Insurance Company of North America appeals, making both N. M. Burton and the National Fire Insurance Company of Hartford defendants in error.

On November 29, 1929, the cause was, as to defendant in error N. M. Burton, revived in the name of S. D. Homan, administrator.

The question as to which company is liable depends entirely upon whether or not J. S. Hurt was the agent of Burton, with power to accept or waive notice of cancellation of the first policy. The finding and judgment of liability of both companies, the one primary and the other secondary, cannot be sustained. No serious attempt is made by either party to sustain this holding. It must be that the first policy was

still in effect at the date of the fire, and the National Fire Insurance Company of Hartford solely liable, or that its policy had been canceled, and that of the Insurance Company of North America put into effect as a substituted policy, and that company consequently solely liable.

For convenience the policy of the National Fire Insurance Company of Hartford will hereinafter be referred to as the first policy, and that of the Insurance Company of North America as the second policy.

It is conceded that there was no notice given to Burton of the attempted cancellation of the first policy until after the fire, and the cancellation was therefore ineffective, unless, as before stated, J. S. Hurt, who was the agent of both companies with power to issue and sign policies of insurance for both companies, was also the agent of the insured with power to accept or waive notice of cancellation.

It is suggested that by reason of section 6723, C. O. S. 1921, Hurt was made the agent of the insurance company in all matters relating to the application for insurance, and the policy issued in consequence thereof, and therefore could not be the agent of Burton in any matter relating to the policy, and therefore could not for Burton accept or waive notice of cancellation. Section 6723 reads:

"Any person who shall solicit and procure an application for insurance shall, in all matters relating to such application for insurance and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."

A number of cases from this court are cited in support of this suggestion, but none of them cover the question here presented. 22 Cyc. 1445, states the rule applicable here, as follows:

"But the same person may act for different purposes as agent of the different parties to the contract so that for one purpose he may be the agent for the insured, although, as to the procuring of the insurance, he also represents the company."

In Davis Lbr. Co. v. Hartford Fire Ins. Co. (Wis.) 70 N. W. 84, it was held:

"Rev. St. sec. 1977, providing that whoever solicits insurance for any insurance company or property owner, or transmits an application for insurance or a policy, is an agent of the company, does not preclude such solicitor from acting as agent of the insured in some particulars."

In Hamm Realty Co. v. N. H. Fire Ins. Co. (Minn.) 83 N. W. 41, it was held:

"A general insurance agency, representing several companies, with authority to act upon applications and issue policies, as well as to cancel the same, in proper cases, may also act as the agent of the insured in waiving a notice of cancellation, and in accepting a delivery of a new policy when substituted for the one canceled."

The question then is whether, under the evidence in this case, Hurt was, in fact, the agent for Burton with power to accept or waive notice.

The undisputed evidence is that Burton had owned the potato warehouse for some six or eight years; that he had had it insured by Hurt each year, for a number of years, applying to Hurt the first year for insurance and allowing Hurt to select the company. When the policy would expire, Hurt would, sometimes without further request by Burton, renew the insurance se'ecting the company himself, and deliver the policy and send the bills to Burton for the premium, which Burton would pay. This continued until the fall of 1925, when the insurance expired and was renewed as before, but Burton failed to pay the premium and the policy was canceled for nonpayment. Burton had apparently forgotten that his policy had been canceled, and on September 26, 1926, called Hurt's attention to the fact that his policy was about to expire, or asked Hurt if it was not about out. Hurt, apparently not wishing to embarrass Burton by calling attention to the fact that his policy had long prior thereto been canceled for nonpayment of premium, stated to him that it did expire that day, which was, in fact, the date it would have expired had it not been canceled. Thereupon, Burton requested him to insure the property for $2,500, with mortgage clause attached in favor of the Central Trust Company of Tulsa, and mail the policy to the trust company. Nothing was said as to what company Hurt would place the policy with, thus leaving the selection of the company to Hurt. Twenty dollars was paid on the premium, whether at the time or later does not appear. As before stated, the policy was written in the National Fire Insurance Company of North America, countersigned by Hurt as agent of the company, but was never mailed to the trust company. Hurt was somewhat slow in getting his report in to his company, and it was not re-

ceived by the company until about November 5th. Immediately upon receipt of the report, the insurance company wired Hurt to cancel the policy. The next day after the receipt of telegram, he marked the policy canceled, and immediately signed the new policy. The next day, November 7th, the warehouse burned. On the 8th he informed Burton what he had done, and thereafter collected the balance of the premium, $22. Credit was given Burton by Hurt upon his ledger for the full amount of the premium on the first policy. Thereafter he erased the name "National," and inserted the abbreviation "N. A.," which he said was for North America, indicating the Insurance Company of North America. The cancellation was not at the short rate, but he said "it was canceled flat," meaning, as he explained, without charge. The second policy was dated November 6th.

He explained his reason for erasing the entire charge on his ledger by saying that at that time they were allowed 30 and sometimes 60 days for cancellation of the policy "flat." In other words, if the premium was not paid or for any reason the policy was canceled within the first 60 days, it was canceled without charge.

There was no direction or request by Burton to keep the property insured. There was no express authority given, nor request made, to issue a new policy in case of a cancellation for any cause. Burton testified as to how the insurance was handled, as follows:

"Question. Now what was the method followed by you and Mr. Hurt in his handling of the insurance business he handled for you? A. Well, if my policy expires, why he would write me the new policy and mail it to me or send me a notice what I owed him, something like that. Q. Did you direct him, tell him in any way to keep up your insurance? * * * Q. That is, I mean the part that he was carrying for you? * * * A. I expected him to, if a policy expired, I expected him to write a new one at the expiration of the policy and notify me if I owed him, he always did do that."

He testified that he did not think he ever told or requested Hurt to keep the property insured.

There is a well-established rule that, where an owner constitutes the agent of a fire insurance company his agent to keep the property insured with power to select the insurer or insurers, such agency carries with it the power to cancel a policy without notice to the insured and substitute therefor a policy in another company, as he may be the agent for the insured for such purpose, and, as such, may, for the insured, waive notice. Wilson v. German American Ins. Co. (Kan.) 133 Pac. 715; Phoenix Ins. Co. v. State (Ark.) 88 S. W. 917; Allemania Fire Ins. Co. v. Zweng (Ark.) 191 S. W. 903; Aetna Ins. Co. v. Renno (Miss.) 50 So. 563; Dibble v. Northern Assurance Co. (Mich.) 37 N. W. 704.

There are some cases where it is held that agency for the insured for the purposes stated may be established by a long course of conduct and uninterrupted custom, without express authority being conferred in writing or by parol. Hamm Realty Co. v. New Hamp. Fire Ins. Co. (Minn.) 83 N. W. 41, 87 N. W. 933. In that case it had been the custom between the insured and the agent for the insurance companies, where policies of insurance were canceled by the insurers, to immediately substitute new policies.

In the first appeal, it was held that this long course of dealing would justify a conclusion that the agent was authorized to waive notice of cancellation on behalf of the insured.

In the second appeal, it was held that evidence of business usage, as indicated, was sufficient to require a submission to a jury of the question of whether authority to waive the notice and issue a new policy had been established. 87 N. W. 933. In the instant case, we have no evidence of such usage or custom. No policy had ever been canceled by the insurer and a new policy substituted, except upon the occasion under consideration. So there is no evidence of such business usage between the parties.

There is evidence that it was the custom where a policy would expire for the agent to renew the insurance, without a specific request though the first policy was upon specific request of plaintiff. But we think evidence of a custom to renew policies of insurance upon their expiration without the request of the insured is not sufficient to establish agency by custom, carrying with it power to accept or waive notice of cancellation and substitute new policies without the knowledge of the insured.

In Waterloo Lbr. Co. v. Des Moines Ins. Co. (Iowa) 138 N. W. 504, it was held:

"Where one applied to an agent authorized to issue policies and collect premiums for insurance in a stated sum, and the agent issued a policy therefor, delivered it, and collected the premium, the contract was

complete, and the agent on notice from insurer to cancel the policy could not without insured's knowledge place the risk with another insurer."

In Clark v. Ins. Co. of N. A. (Me.) 35 Atl. 1008, it was held:

"Where a valid contract of insurance has been effected, and the assured has accepted the policy in a particular company, the agent of the company has no right to cancel such policy, or place the assured in any other company, without the authority or request of the assured."

There being no evidence of express authority for the agent to cancel the first policy, and there being no sufficient evidence of direction by plaintiff to the agent to insure the property and keep it insured, and no evidence of a course of dealing or custom between the parties sufficient to justify a conclusion that the agent was authorized to act for the plaintiff to the extent of waiving notice of the cancellation of the first policy, we conclude that no notice having been given to plaintiff as required by law and the terms of the policy, the first policy was not canceled before the fire occurred, and it was then too late.

The trial court therefore erred in its holding that the Insurance Company of North America was primarily liable, and in rendering judgment against it. The holding that the National Fire Insurance Company was secondarily liable was also erroneous. But said last-named company was liable to plaintiff, and judgment should have been for plaintiff against the National Fire Insurance Company of Hartford, and for the Insurance Company of North America.

The judgment should be, and is hereby reversed, and the cause remanded, with directions to enter judgment in favor of plaintiff and against the National Fire Insurance Company of Hartford in the sum of $2,500, with interest from March 1, 1927, at six per cent. per annum, and to dismiss the action as to the Insurance Company of North America.

BENNETT, HERR, HALL, REID, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) 49 L. R. A. (N. S.) 974; 14 R. C. L. pp. 875, 876; R. C. L. Perm. Supp. p. 3694.